# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SILVON X. WHITE,

                      Petitioner,           :     Case No. 1:19-cv-215

     - vs -                           District Judge Timothy S. Black
                                   Magistrate Judge Michael R. Merz

WARDEN, Pickaway Correctional
 Institution,

                                       :
                    Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner White under 28 U.S.C. § 2254, is before the Court for decision on the merits on the Petition (ECF No. 3), the State Court Record (ECF No. 9 & 10), the Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 16).  The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the Southern District of Ohio (ECF No. 18).

**Litigation History**

On August 6, 2015, White was indicted by the Scioto County grand jury on one count of possession of heroin in violation of Ohio Revised Code §§ 2925.11(A) and 2925.11(C)(6)(e)), one count of trafficking in heroin in violation of Ohio Revised Code §§ 2925.03(A)(2) and 2925.03(C)(6)(f)), and one count of tampering with evidence  in violation of Ohio Revised Code

§§ 2921.12(A)(1) and 2921.12(B)). (Indictment, ECF No. 10, Exhibit 1).  A trial jury convicted him on the heroin charges, but acquitted him on evidence tampering.  The trial judge then merged the two heroin charges under Ohio Revised Code § 2941.25 and sentenced White to a mandatory term of six years imprisonment. *Id.* at Exhibit 3.

White appealed, asserting both that the evidence was insufficient to convict and that the conviction was against the manifest weight of the evidence.  The Court of Appeals affirmed.  *State v. White*, 2017-Ohio-8087 (Ohio App. 4th Dist. Sept. 25, 2017), appellate jurisdiction declined, 152 Ohio St. 3d 1423 (2018).

On January 22, 2018, White filed an application to reopen his direct appeal under Ohio R. App. P. 26(B), raising four claims of ineffective assistance of appellate counsel (State Court Record, ECF No. 10, Ex. 13).  The Fourth District found that White's filing was nearly a month beyond the ninety-day deadline and he had offered no good cause to excuse the late filing.  *State v. White,* Case No. 16CA3747 (Ohio App. 4th Dist. May 16, 2018)(unreported; copy at State Court Record, ECF No. 10, Ex. 14), appellate jurisdiction declined, 153 Ohio St. 3d 1485 (2018).  The court denied the application to reopen because it was untimely and also because White had failed to establish a genuine issue as to whether he had received ineffective assistance of appellate counsel. *Id.*, particularly PageID 472-73.

White then filed his Petition in this Court, pleading five grounds for relief:

> **Ground One**: The evidence was insufficient as a matter of law to convict appellant of trafficking in heroin; or, in the alternative, the convictions were against the manifest weight of evidence.
>
> **Supporting Facts**: The petitioner was convicted of Trafficking in Heroin on the theory of "constructively possession" of Heroin. The evidence presented never actually showed the petitioner possessing the drug. Nor could it been proven that the actual substance weighed more than ten grams or less than fifty grams as charged in the indictment. The petitioner was not found guilty of count one then it

2

is clear that the petitioner could not be guilty of count two. (sic)

**Ground Two**: Appellant was denied the effective assistance of appellate counsel for appellate counsel failed to fully raise and brief trial counsel ineffectiveness as to the trial court violating the appellants Sixth, and Fourteenth Amendment rights under the U.S. Constitution.

**Supporting Facts**: The petitioner was found guilty to be in possession of Heroin that was equal to or greater than ten grams. The submitted documents was from the pictures taken by the Ohio State Higway [sic] Patrol Officer in which did not show the actual weight of the Heroin. Therefore this conviction cannot stand.

**Ground Three**: Appellant was denied the effective assistance of appellate counsel for appellate counsel failed to fully raise and brief trial counsel ineffectiveness as to violating the appellant to call a witness in his behalf violating the appellants Fifth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution.

**Supporting Facts**: Appellate counsel was ineffective for not raising the trial counsel ineefectiveness [sic] for not calling the person who performed the labortory [sic] analysis of the Heroin, for if this witness would have testified that the true actual weight more likely did not exceed ten (10) grams.

**Ground Four:** Appellant was denied the effectiveness assistance of appellate counsel for appellate counsel failed to fully raise and brief trial counsels ineffectiveness as to violating the appellants due process and right to effective assistance of counsel afforded to him under the U.S. Constitution.

**Supporting Facts**: The petitioner was found guilty of Trafficking and Possession of Heroin. But this was done under the "constructive possession" theory, more so petitioner was convicted on the evidence of another.

**Ground Five**: Appellant was denied the effective assistance of appellate counsel for appellate counsel failed to fully brief trial counsel ineffectiveness as to the Ohio State Highway Patrol Officer racially profiling the appellant violating the appellants Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution.

**Supporting Facts**: This case stems from a traffic accident where the petitioner was not the driver but the Ohio State Highway Patrol

> Officer still asked the petitioner for his identification. When in all actuality the patrolman just had to insure all occupants safety and if they needed medical treatment. Petitioner had no warrants and should have been released. The patrolman researched into the petitioner backround [sic] and seen [sic] that he had a prior conviction for drugs, this was done because the petitioner was from Detroit; Petitioner submits that this is a case of "Driving While Black."

(Petition, ECF No. 3.)

# Analysis

## Ground One:  Conviction on Insufficient Evidence and Against the Manifest Weight of the Evidence

In his First Ground for Relief, Petitioner asserts he was convicted on constitutionally insufficient evidence and his conviction is against the manifest weight of the evidence.

The claim that a conviction is against the manifest weight of the evidence does not state a claim for relief under the United States Constitution.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  Because a conviction against the manifest weight of the evidence does not violate the federal Constitution, this Court cannot consider it.

However, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).

In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable

> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam).  The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

In deciding this question on appeal, the Fourth District held:

> [*P2]  On March 29, 2016, the grand jury returned an indictment
> that charged appellant with (1) one count of possession of heroin in
> violation of R.C. 2925.11(A)(C)(6)(e), and (2) one count of
> trafficking in heroin in violation of R.C. 2925.03(A)(2) & (C)(6)(f),
> both felonies of the second degree.

[*P3]  At trial, Ohio State Highway Patrol Trooper Michael Ervin testified that after he arrived at an accident on August 5, 2015, he found one female and two males standing next to a van with Florida license plates with a blown tire and deployed airbags. After placing one male and one female at the rear bumper of their car directly in front of his cruiser, Trooper Ervin questioned the driver, Anthony Mays. Mays stated that he and Amber Adkins had gone to the Greyhound Bus Station in Columbus to pick up appellant. However, Mays claimed that he did not know appellant's name and that he did not know who had rented the vehicle.

[*P4]  After further questioning, Mays admitted to the trooper that Adkins had drugs on or around her. When the trooper asked "well, why is she holding? Why ain't he [appellant] holding," Mays replied "I guess he's got to have an escape [sic] goat." When asked "tell me how you know she's holding that," Mays replied "because after the crash everybody was freaked out." When asked, "who had the dope prior to the crash," Mays replied "Amber had it." When asked where Amber had it, Mays replied "I'll give you two guesses, but you only need one." Shortly thereafter, Trooper Ervin saw Adkins, who was outside of the car, "turn real quick and I saw her arms go up."

[*P5]  When Trooper Ervin questioned Adkins, Adkins initially stated that Mays is her boyfriend and that they were returning from Detroit. She later admitted, however, that Mays is not her boyfriend, and noted that like Mays, she did not know appellant's name and only knew him as "Fifty." Like Mays, Amber did not know who rented the vehicle and stated that she did not know whose idea it was for she and Mays to pick "Fifty" up in Detroit. When Trooper Ervin asked her about the drugs, Adkins admitted that she previously concealed the drugs on her body, but had thrown the drugs away from the van while Trooper Ervin spoke with Mays.

[*P6]  Ohio State Highway Patrol Trooper Nick Lewis, who arrived at the scene while Trooper Ervin questioned the three co-defendants, testified that he walked about eight feet from the passenger door of the rental van and found a cylindrical package about the size of a hot dog, wrapped in black electrical tape and condoms. He further testified, that "once we took it back to the post and outside of all packaging it weighed 54 grams and it was heroin." A criminalist in the Drug Chemistry Department with the Patrol Crime Lab testified that she tested the substance recovered at the accident scene and found it to contain heroin. Also, the package weighed 49.315 grams, plus or minus .012 grams.

7

[*P7] When Trooper Ervin first began to question appellant, Ervin mentioned to a paramedic who had just arrived on the scene that "He's going to be locked up," referring to appellant. Appellant responded: "What am I getting locked up for? That's not my sh*t. Not my sh*t. My DNA ain't on that damn thing." Later appellant stated "[w]here the f**k was the dope at? I ain't seen no dope. I know you ain't seen sh*t." Appellant then stated to Amber, while they were placed in the back of the patrol car, "Don't say nothing in this car."

[*P8] Adkins, who pled guilty, testified at appellant's trial that she and Mays had driven to Detroit to pick up appellant and the "dope." Adkins was expected to transport the drugs on, or in, her body. In exchange, she would also receive a portion of the drugs or money. Adkins noted that August 5 was not the first time she had seen appellant. She stated that when she arrived in Detroit, while Mays stayed in the van, she "got out the van, walked in the house and stuffed the dope." When asked "did he tell you to stuff it," Adkins replied "Yes, sir." When asked what that means, Adkins replied "[t]o stick it in my private area." Adkins stated that she was unable to "stuff" the heroin because the package was too large. She said she and appellant got into the van with Mays and headed back to Portsmouth. Adkins also testified that when the accident occurred, she and Mays wanted to "get rid of it [the drugs]," but appellant did not.

[*P9] Mays, who also pled guilty, testified that on the morning of August 5, he picked up Adkins and the rental van from a guy he knew as "Unk." After getting gas, he and Adkins drove to Detroit to pick up Unk's nephew. Mays testified that he did not know who it was (Unk's nephew) until he got there and learned that it was the appellant, who Mays had seen in Portsmouth once before.

[*P10] Mays explained that during the return drive to Portsmouth, he became tired and ran off the road. Mays also testified that he knew that when they left Detroit with appellant, the van contained a controlled substance. Mays stated that in exchange for driving from Portsmouth to Detroit to pick up defendant and the drugs, he would receive two and a half grams of the heroin and $100.

[*P11] After hearing the evidence, the jury found appellant guilty of both possession and trafficking in heroin. The trial court sentenced appellant to serve six years in prison and three years of postrelease control. This appeal followed.

[*P12]  In his sole assignment of error, appellant asserts that (1) the evidence is insufficient as a matter of law to convict him of trafficking in heroin and (2) the convictions are against the manifest weight of the evidence. In particular, appellant makes two arguments, one regarding whether he exercised dominion and control over the package of heroin, and one regarding the amount of the heroin in the package.

**Standard of Review**

[*P13]  A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Taylor*, 4th Dist. Ross No. 13CA3419, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 27, citing *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). Thus, the standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Taylor* at ¶ 27, citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991); *State v. Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard,* 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27, citing *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. Thus, a reviewing court will not overturn a conviction for insufficient evidence unless "reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Tibbetts*, 92 Ohio St. 3d 146, 162, 2001 Ohio 132, 749 N.E.2d 226 (2001).

[*P14]  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins*, 78 Ohio St. 3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997); *Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, quoting

Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1stDist.1983); *State v. Lindsey,* 87 Ohio St. 3d 479, 483, 2000 Ohio 465, 721 N.E.2d 995 (2000).

[*P15]  As this court noted in Taylor, "[i]t is important to recognize that when an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *Taylor* at ¶ 32, citing *State v. Pollitt,* 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15. Therefore, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Taylor*, citing *State v. Lombardi,* 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶ 9.

### Trafficking and Possession

[*P16]  In the case *sub judice,* appellant was convicted of trafficking in heroin in violation of R.C. 2925.03(A)(2)/(C)(6)(f) and possession of heroin in violation of R.C. 2925.11(A)/(C)(6)(e). R.C. 2925.03(A)(2) states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant contends that the evidence did not show that he knowingly possessed the drugs discovered in the vehicle.

[*P17]  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St. 3d 490, 492, 1998 Ohio 193, 696 N.E.2d 1049 (1998); accord *State v. Corson,* 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 13.

[*P18]  Possession may be actual or constructive. *State v. Moon,* 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989). "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v. Kingsland*, 177 Ohio App. 3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39.

[*P19]  Because the heroin in the case at bar was not found on appellant's person, the state had to prove that appellant constructively possessed it. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91, 434 N.E.2d 1362; *Kingsland* at ¶ 13. Generally, constructive possession may be proved by circumstantial evidence alone. See *Taylor* at ¶ 35, citing *Brown* at ¶ 19. See also *State v. Dues,* 8th Dist. Cuyahoga No. 100861, 2014-Ohio-5276, ¶ 22, 24 N.E.3d 751. Further, this court has said: "Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. *[State v.] Fry*, [4th Dist. Jackson No. 03CA26, 2004-Ohio-5747,] at ¶ 40. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Kingsland* at ¶ 13.

[*P20]  In the case *sub judice*, the parties do not dispute that the substance recovered near the rental van, in which the appellant was a passenger, was heroin. Rather, appellant argues that the state failed to present sufficient evidence to establish that appellant knowingly possessed, by means of constructive possession, the heroin discovered near the van. Appellant contends that the state's evidence that appellant told Adkins to "stuff" the heroin, when Adkins and Mays picked him up in Detroit, is insufficient to establish dominion and control because the package of heroin was too large for Adkins to be able to comply with appellant's direction. Appellant also argues that the state failed to cite any testimony that appellant told Adkins to dispose of the heroin.

11

[*P21]  In support of his position, appellant cites *State v. Criswell,* 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, wherein this court found that although the state presented evidence from which the trial court could reasonably conclude that appellant knew the heroin was in the van, the state failed to show that Criswell ever had the ability to exert dominion or control over the heroin. In *Criswell,* we concluded that no evidence indicated that Criswell, a passenger in the vehicle, ever had access to the drugs in question.

[*P22]  This case, however, presents a very different set of facts. Although appellant did not own or drive the vehicle, we believe that the evidence adduced at trial established that appellant exerted dominion and control over the heroin. Both Adkins and Mays testified that the appellant gave the heroin to Adkins to "hold." Adkins testified that when she and Mays arrived at the Detroit drug house, she entered and met appellant, who gave her the heroin and told her to "stuff it," which she explained meant to "stick it in my private area." Regardless of whether Adkins was physically able to comply with this specific directive, Adkins, at appellant's direction, had the heroin on her person during the trip from Detroit to Portsmouth.

[*P23]  Appellant also cites *State v. Cola,* 77 Ohio App.3d 448, 602 N.E.2d 730 (11th Dist.1991) to support his argument that a defendant's mere presence in an area where drugs or other contraband are located is insufficient to demonstrate that the defendant constructively possessed the drugs. However, we again point out that the instant case presents more than mere presence. Here, two witnesses testified that appellant gave the heroin to Adkins, who acted as a drug mule, and told her to transport the drugs. In addition, the jury observed the dash camera and cruiser audio/video recordings of the witnesses at the scene while they stated the same information. Thus, we believe that the case *sub judice* presents facts far beyond "mere presence."

[*P24]  Finally, appellant cites to *Cincinnati v. McCartney,* 30 Ohio App.2d 45, 281 N.E.2d 855 (1st Dist.1971), in which the defendant was found not to possess marijuana when he sat six feet from a growing marijuana plant in an apartment that he did not own. We, however, observe that McCartney involved a dwelling rather than a motor vehicle, and that the record showed that the only testimony concerning the connection between McCartney and the marijuana plant is that (1) McCartney was seated close to the plants when officers entered the apartment, and (2) an unidentified person in the apartment told the officers that all of the people present helped tend the plants. Again, we find *McCartney* to be distinguishable.

12

[*P25]  In summary, we believe, after our review of the record, that the case *sub judice* is not a situation in which an unsuspecting passenger had the unfortunate luck of finding himself in the presence of contraband and being convicted of possession simply based upon that presence alone. As we noted above, appellant's presence, coupled with two witnesses who testified to facts that established appellant's dominion and control, support the trier of fact's finding that appellant constructively possessed the heroin. Contrary to appellant's assertions, our review reveals that ample competent, credible evidence supports the jury's determination that appellant constructively possessed the heroin found near the rental van in which appellant was a passenger. Thus, we conclude that sufficient evidence supports the trial court's judgment and that the judgment is not against the manifest weight of the evidence.

**Quantity of heroin**

[*P26]  In addition, appellant argues that the record is devoid of sufficient evidence to prove that the actual amount of heroin contained within the substance that was weighed is equal to, or greater than, 10 grams. Thus, he argues that he may only be convicted under R.C. 2925.03(A)(1)/(C)(6)(a) and R.C. 2925.11(A)/(C)(6)(a) as felonies of the fifth degree.

[*P27]  Both the drug possession and the drug trafficking penalty enhancement provisions require that, for a second degree felony, the state must prove that the quantity of heroin "equals or exceeds ten grams but is less than fifty grams." To prove that the heroin weighed ten or more grams, the state presented the testimony of Crystal Soles, a criminalist in the Drug Chemistry Department with the Ohio State Highway Patrol Crime Lab. Soles testified that she tested the substance and found it to contain heroin weighing 49.315 grams, plus or minus, .012 grams, as noted on State's Exhibit 3.

[*P28]  Appellant cites to this court's decision in *State v. Spencer*, 4th Dist. Scioto No. 15CA3718, 2017-Ohio-456, 84 N.E.3d 106, to support his argument that a rational trier of fact could not have concluded, beyond a reasonable doubt, that the weight of the heroin alone equaled or exceeded ten grams. However, Spencer involved a case in which the lab supervisor testified that she could not remove all of the plastic wrapping from the heroin because the heroin was so sticky, and the weight of the heroin and the plastic was 10.5 grams. *Spencer* at ¶ 46. This court concluded that no evidence existed concerning the relative weight of heroin to plastic. Here, however, the weight of the heroin is 49.315 grams, well over the ten

gram minimum. Moreover, no evidence was adduced at trial regarding packaging or any other substance that affected the weight of the heroin as in Spencer.

[*P29]  Appellant also cites *State v. Gonzales,* 150 Ohio St. 3d 261, 2016-Ohio-8319, 81 N.E.3d 405 in support of his argument. In Gonzales I, the Supreme Court of Ohio held that the offense level for possession of cocaine should be determined only by the weight of the actual cocaine, not by the total weight of the cocaine plus any filler. *Id.* at ¶ 22. However, the Supreme Court of Ohio later granted reconsideration and, in *Gonzales II*, the court held that "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." Thus, the court vacated its decision in *Gonzales I*. See *State v. Gonzales*, 150 Ohio St. 3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 3. Moreover, Gonzales involved statutory language specific to cocaine. See Spencer, footnote 1.

[*P30]  Therefore, after our review we conclude that ample competent, credible evidence exists to establish that appellant possessed heroin in violation of R.C. 2925.11(A)(C)(6)(e) and trafficked in heroin in violation of R.C. 2925.03(A)(2) and (C)(6)(f).

*White, supra.*

In his Reply, Petitioner does not dispute that Judge Abele's opinion accurately recites the evidence offered at trial.  However, he argues

> Ms. Adkins testified that the Petitioner gave her the Heroin to hold. The credibility of this statement comes into question as to her criminal history and at best her testimony was prejudicial. Ms. Adkins proffered this testimony for the possible chance at a lenient sentence at the very outset. Cf. *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988).

(Reply, ECF No. 16, PageID 560).  Of course a witness's prior history of felony convictions and her motive in testifying are valid arguments to be made and shown by evidence to the jury.  But it is the jury who ultimately decides the credibility of witnesses.  A habeas court cannot re-weigh credibility determinations made by a jury.  *Brooks v. Tennessee, supra.*

Petitioner notes that the State proceeded on a theory that Petitioner had constructive

possession of the heroin in that, although Adkins had physical control of the package, she was acting under White's control.  He notes particularly that Adkins admitted throwing the heroin away from the stopped vehicle in which she, White, and co-defendant Mays had been traveling (Reply, ECF No. 15, PageID 561.)

Petitioner asserts this evidence is insufficient to prove constructive possession "under U.S. Supreme Court precedents." *Id.* However, he cites no such precedent.  Instead he relies on *United States v. Kitchen,* 57 F.3d 516 (7th Cir. 1995), and *United States v. Poole,* 878 F. 2d 1389 (11th Cir. 1989).  These are not Supreme Court precedents, but decisions of the Seventh and Eleventh Circuit Courts of Appeals, respectively.  They also do not support Petitioner's argument.  In *Poole* the defendant was convicted of constructive possession of cocaine with intent to distribute.  The Eleventh Circuit upheld her conviction upon proof that she "was the sole owner of the house where cocaine was found under the couch and in an urn in her bedroom and that a plastic bag containing money and trace amounts of cocaine were found under her bed."

The Seventh Circuit in *Poole* defines "the knowing exercise of or the knowing power or right to exercise dominion and control over the substance." 878 F.2d at 1392, citing *United States v. Knight,* 705 F.2d 432, 433 (11th Cir. 1983). Constructive possession need not be exclusive, *Id.* citing *Montes-Cardenas,* 746 F.2d at 778, and can be proven circumstantially by ownership, dominion, or control over the premises on which the substance is located. *Id.* citing *United States v. Glasgow,* 658 F.2d 1036, 1043 (5th Cir. Unit B 1981).

*Poole* does not purport to establish a constitutionally minimum amount of proof necessary to prove constructive possession and it is not in any event a decision of the Supreme Court.  It is illustrative of the kinds of evidence which courts find sufficient to prove constructive possession.  There is far more evidence here where both co-defendants testified to the circumstances which led

to Ms. Adkins physical possession of the heroin, to wit, that she was "holding" it for White because he needed, in Mays' words, an "escape goat."

*Kitchen*, in contrast to *Poole*, was an actual possession case. Kitchen was shown to have intended to acquire $28,000 worth of cocaine, but actually only touched it for, at most, two or three seconds. The Seventh Circuit held that was not long enough. *Kitchen* has no relevance here where the charge was constructive possession.

In constructive possession cases, as Petitioner reminds the Court, mere proximity is not enough for conviction. But the State presented much more than mere proximity here. The other two people in the car testified Adkins was holding it for White, i.e., acting as his courier. That is sufficient to show constructive possession.

Petitioner also claims the State did not prove the true weight of the seized heroin (Reply, ECF No. 16, PageID 559). However, he makes no argument in support of this claim. The Fourth District held the State had presented testimony from a criminalist at the Ohio State Highway Patrol Crime Lab who weighed the heroin and found it contained 49.315 grams plus or minus .012 grams[1]. *White, supra,* at ¶ 27. Thus there is sufficient evidence of the weight of the seized heroin to support the conviction.

Petitioner's first Ground for Relief is without merit and should be dismissed on that basis.


**Grounds Two through Five: Ineffective Assistance of Appellate Counsel**


In his Second through Fifth Grounds for Relief, Petitioner asserts he received ineffective assistance of appellate counsel when his appellate lawyer did not accuse his trial lawyer of

---

[1] This form of testimony gives the accurate weight as somewhere between 49.303 and 49.347 grams. This is another way of expressing the fact that the scale used to measure the heroin is accurate to within one tenth of a gram.

ineffective assistance of trial counsel when the trial lawyer (1) allowed photographs of the heroin to be admitted in evidence (Ground Two), failed to call as a witness the person who did the weighing of the heroin (Ground Three), allowed White to be convicted of possession of heroin "on the evidence of another" (Ground Four), and did not sufficiently challenge the initial stop and investigation (Ground Five).

Respondent asserts all four of these grounds for relief are barred by Petitioner's procedural default in presenting them to the State courts, i.e., by failing to timely file the Application for Reopening. Petitioner responds that the Fourth District "failed to properly address the alleged procedural default and address the claims on the merits." (Reply, ECF No. 18, PageID 562, citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Petitioner also urges the Court to find cause for any alleged procedural default but does not suggest what that cause may be.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v.*

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004).  "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)].  The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.  See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> > . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule, to wit, that claims of ineffective assistance of appellate counsel must be made in an application to reopen the direct appeal which must be filed within ninety days of the date the appellate judgment becomes final.  The Fourth District recognized that rule and actually enforced it to dismiss White's 26(B) Application as untimely filed.   *State v. White,* Case No. 16CA3747 (Ohio App. 4th Dist. May 16, 2018)(unreported; copy at State Court Record, ECF No. 10, Ex. 14).

The time limits for an App. R. 26(B) application have been firmly established and regularly followed by the Ohio courts since at least 1996. *Hoffner v. Bradshaw*, 622 F.3d 487, 504-505 (6th Cir. 2010); *Landrum v. Mitchell,* 625 F.3d 905 (6th Cir. 2010).  In noncapital cases, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*,  281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).   Thus Petitioner procedurally defaulted his ineffective

assistance of appellate counsel claims by not filing his 26(B) Application on time.

As noted above, White urges this Court to excuse his procedural default, but does not suggest what excusing cause could be.

White also argues that this Court should reach the merits because the Fourth District offered an alternative merits analysis (Reply, ECF No. 16, PageID 562). Supreme Court precedent does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000); *McBee v. Abramajyts*, 929 F. 2d 264, 267 (6th Cir. 1991). Although a state court discusses the merits of a claim in the alternative, there can still be procedural default if the state court rules on the procedural ground. *Coe v. Bell,* 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied,* 120 S. Ct. 110 (1999).

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991), relied on by Petitioner, is not to the contrary. There the Court held that where has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground. That is not the situation here: the Fourth District thoroughly explained its decision.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.


May 20, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.